# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

FRASER VERRUSIO,

Defendant.

Criminal Case No. 09-cr-00064 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the defendant's motion for reconsideration, Def.'s Mot. Reconsideration Mem. Opinion Def.'s Mot to Vacate, Set Aside, and Correct Sentence Pursuant to 28 U.S.C. § 2255, or in the Alternative, Petition for a Writ of Error *Coram Nobis* ("Def.'s Mot. Reconsider"), ECF No. 180, of the decision denying the defendant's motion to vacate his convictions pursuant to 28 U.S.C. § 2255, or in the alternative, the defendant's petition for a writ of error *coram nobis*, *see United States v. Verrusio ("Verrusio I")*, Crim. No. 09-00064 (BAH), 2017 WL 1437055, at *1 (D.D.C. Apr. 21, 2017). Specifically, the defendant argues that this Court should reconsider its ruling with respect to two issues: (1) its determination that the defendant did not have standing to petition for a writ of error *coram nobis*; and (2) that the defendant has satisfied the "adverse consequences" prong of the *coram nobis* test because the reversal of two of his counts for receipt of an illegal gratuity would require reversal of his third count for making a false statement on his financial disclosure form. For the reasons set forth below, the defendant's motion is denied.

## I.    BACKGROUND

The background of this case has been fully summarized in prior decisions in this case, *see generally United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014); *Verrusio I*, 2017 WL 1437055, at *1, and, thus, only those facts necessary for resolving the instant motion are provided below.

In 2011, the defendant, a policy director for the Committee on Transportation and Infrastructure of the U.S. House of Representatives, *Verrusio*, 762 F.3d at 6, was convicted by a jury on three separate counts: (1) conspiracy to receive an illegal gratuity, in violation of 18 U.S.C. § 371; (2) receipt of an illegal gratuity, in violation of 18 U.S.C. § 201(c); and (3) making a false statement, in violation of 18 U.S.C. § 1001(a), Judgment at 1–2, ECF No. 139.  The charges stem from his acceptance of numerous gifts from lobbyists associated with Jack Abramoff, including an overnight trip to the 2003 World Series.  *Verrusio*, 762 F.3d at 6–7.

After unsuccessfully appealing his convictions, the defendant sought a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2255, or in the alternative, a writ of error *coram nobis* under 28 U.S.C. § 1651, to vacate his convictions, primarily based on the contention that he did not receive a gratuity in exchange for an "official act."  The defendant argued that in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), the Supreme Court narrowed the definition of what qualifies as an "official act" under 18 U.S.C. § 201(a) such that the defendant's conduct fell outside the ambit of § 201.  Def.'s Mot. to Vacate, Set Aside, and Correct Sentence Pursuant to 28 U.S.C. § 2255, or in the Alternative, Petition for a Writ of Error *Coram Nobis* ("Def.'s Mot.") at 12–19, 29, ECF No. 162.

This Court first held that it lacked jurisdiction over the defendant's petition for a writ of *habeas corpus* because the defendant was no longer "in custody" for the purposes of § 2255, a fact which the defendant conceded.  *See Verrusio I*, 2017 WL 1437055, at *7; *see* Def.'s Mot. at

12 (conceding that the defendant "is not currently subject to any restriction that the current weight of authority views as meeting the 'in custody' requirement of section 2255(a)").

Addressing the defendant's alternative argument for a writ of *coram nobis*, this Court noted that judges of this Court have traditionally applied a four-pronged test to determine whether *coram nobis* relief is warranted: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. Faison*, 956 F. Supp. 2d 267, 269 (D.D.C. 2013) (quoting *United States v. Hansen*, 906 F. Supp. 688, 692–93 (D.D.C. 1995)); *see also United States v. Lee*, 84 F. Supp. 3d 7, 9 (D.D.C. 2015); *United States v. Harrison*, No. 12-088 (ESH), 2015 WL 6406212, at *2 (D.D.C. Oct. 21, 2015); *Rossini v. United States*, No. 08-692 (JMF), 2014 WL 5280531, at *1 (D.D.C. Oct. 14, 2014). The defendant argued that he satisfied the third prong of this test because he was suffering from several civil disabilities stemming from his felony convictions. Specifically, the defendant noted that Virginia, the state in which he resides, restricts his right to gun ownership because he is a convicted felon, *see* Def.'s Mot. at 27, other states disenfranchise individuals with a criminal conviction, *id.* at 28, and that he suffers from several other civil disabilities, including the right to serve on a jury and "what other countries [the defendant] can visit because some countries restrict the travel of convicted felons," *id.*

Assuming, without deciding, that these civil disabilities were "adverse consequences," this Court held that the defendant still could not satisfy the third prong of the *coram nobis* test "because the defendant cannot show that a favorable decision would redress his alleged injuries." *Verrusio I*, 2017 WL 1437055, at *9.

3

To meet the requirements of Article III, a petitioner must show (1) an "actual or threatened injury," (2) that the injury was caused or resulted from the conduct complained of, and (3) "that the injury is likely to be redressed by a favorable action." *Rossini*, 2014 WL 5280531, at \*4; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that "the irreducible constitutional minimum of standing" includes "injury in fact," "causation", and "redressability").  Accordingly, the defendant had to show that granting a writ of error *coram nobis* would "eliminate the claimed collateral consequence and bring about the relief sought." *United States v. George*, 676 F.3d 249, 256 n.3 (1st Cir. 2012); *see also Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (a *coram nobis* petitioner must show that she "continues to suffer legal consequences from [her] conviction that may be remedied by granting of the writ" (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996))).  Even if Counts I and II were vacated, however, the defendant would still stand convicted of Count III, a felony.  Thus, a favorable decision vacating Counts I and II would not "eliminate the claimed consequence[s] and bring about the relief sought."  *George*, 676 F.3d at 256 n.3.  Accordingly, the defendant's petition for a writ of error *coram nobis* was dismissed.

## II.      LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment."  FED. R. CIV. P. 59(e).  "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 (3d ed. 2012)), and "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice." *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting

*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); *see also Anyanwutaku v. Moore*,

151 F.3d 1053, 1057 (D.C. Cir. 1998) ("A Rule 59(e) motion 'is discretionary' and need not be

granted unless the district court finds that there is an 'intervening change of controlling law, the

availability of new evidence, or the need to correct clear error or prevent manifest injustice.'")

(quoting *Nat'l Trust v. U.S. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993), *aff'd in part

and rev'd in part on other grounds sub nom. Sheridan Kalorama Historical Ass'n v.

Christopher*, 49 F.3d 750 (D.C. Cir. 1995). Rule 59(e) does not provide a vehicle "to relitigate

old matters, or to raise arguments or present evidence that could have been raised prior to the

entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C.

WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, pp. 127–28 (2d ed. 1995)

(footnotes omitted)). "Motions under Rule 59(e) are 'disfavored' and the moving party bears the

burden of establishing 'extraordinary circumstances' warranting relief from final judgment."

*Pinson v. Dep't of Justice*, Civ. No. 12-1872 (RC), 2017 WL 1148424, at *2 n.2 (D.D.C. Mar.

27, 2017) (quoting *Schoenman v. FBI*, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting

*Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001))). Additionally, with

regard to the "clear error" under Rule 59(e), courts have imposed a "very exacting standard,"

*Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012), *aff'd*, No. 12-5296, 2013 WL

1187396 (D.C. Cir. Mar. 14, 2013) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d

414, 422 (D.D.C. 2005); *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000)). Put another

way, "final judgment must be 'dead wrong' to constitute clear error." *Lardner v. FBI*, 875 F.

Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866

F.2d 228, 233 (7th Cir. 1988)). "[I]t is clear that 'manifest injustice' is an exceptionally narrow

concept in the context of a Rule 59(e) motion," *Slate v. Am. Broad. Companies, Inc.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013), and, thus, "must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law," *id.* at 35–36; *cf. Associated Gen. Contractors of Cal., Inc. v. Cal. State. Council of Carpenters*, 459 U.S. 519, 536 (1983) ("[T]he judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.").

## III.    DISCUSSION

The defendant raises two arguments in his motion for reconsideration.  First, the defendant argues that he has standing to bring his petition for a writ of *coram nobis*.  Def.'s Mot. Reconsider at 8–9.  Second, the defendant charges that he has satisfied the "adverse consequences" prong of the *coram nobis* test because, assuming Counts I and II were invalidated, the "prejudicial spillover" from Counts I and II would require the reversal of Count III.  *Id.* at 9–15.  Neither argument has merit.[1]

### A.  Standing

In denying the defendant's petition for *coram nobis* relief, it was determined that the defendant could not satisfy the third prong of the *coram nobis* test: that "adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III." *Verrusio I*, 2017 WL 1437055, at *9; *see Faison*, 956 F. Supp. 2d at 269 (quoting *Hansen*, 906 F. Supp. at 692–93).  The case or controversy requirement of Article III could not be satisfied because the defendant's claimed injuries—certain civil disabilities under State and Federal law stemming from his felony convictions—could not be redressed by a favorable decision: "Even if

---

[1]    Although the defendant requests oral argument, because of the sufficiency of the briefing in this matter, this request is denied.  *See* D.D.C. Local Civil Rule 7(f) (allowance of an oral hearing is "within the discretion of the Court").

the defendant's convictions for Counts One and Two were vacated . . . his felony conviction on

Count Three for making a false statement under § 1001 would remain intact, along with all its

encumbrances under both State and Federal law, including the prohibition against owning a

firearm or serving on a jury." *Verrusio I*, 2017 WL 1437055, at *10.  Consequently, "because

the civil disabilities of which the defendant complains would not be eliminated by a favorable

decision," this Court held that it was "powerless to redress the defendant's alleged injury,

lack[ed] subject-matter jurisdiction over the defendant's claims, and, thus," dismissed the action.

*Id.* at *11.

In moving for reconsideration, the defendant first insists that he has standing and that the

"adverse consequences" prong of the *coram nobis* test is a merits question, not a jurisdictional

one.  Acknowledging that "federal district courts are courts of limited jurisdiction" and that the

"plaintiff must have standing under Article III to bring the claim," Def.'s Mot. Reconsider at 8,

the defendant nonetheless argues he has standing to pursue his *coram nobis* petition because he

has alleged an injury which he vaguely describes as "the violation of his rights," *id.* at 9.  The

defendant is incorrect for at least three reasons.

First, the injury of which the defendant complains—"the violation of his rights"—is

precisely the kind of nebulous injury that is patently insufficient to confer Article III standing.

"Article III of the Constitution limits the judicial power to deciding 'Cases and Controversies.'"

*In re Navy Chaplaincy*, 534 F.3d 756, 759 (D.C. Cir. 2008) (quoting U.S. CONST. art. III, § 2),

*cert. denied*, 556 U.S. 1167 (2009).  In order to have Article III standing, a party's claims must

"spring from an 'injury in fact'—an invasion of a legally protected interest that is 'concrete and

particularized,' 'actual or imminent' and 'fairly traceable' to the challenged act of the defendant,

and likely to be redressed by a favorable decision in the federal court." *Navegar, Inc. v. United*

*States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (quoting *Lujan*, 504 U.S. at 560–61). The

defendant's alleged injury is neither concrete nor particularized. Indeed, it is entirely unclear

what the defendant means by "the violation of his rights" as the defendant does not elaborate.

Second, the defendant is incorrect that the "adverse consequences" prong of the *coram*

*nobis* test is a "merits" question rather than a "jurisdictional" one. "In federal courts the

authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts

established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their

respective jurisdictions.'" *United States v. Denedo*, 556 U.S. 904, 911 (2009) (quoting 28 U.S.C.

§ 1651(a)); *see also United States v. Morgan*, 346 U.S. 502, 506 (1954). "As the text of the All

Writs Act recognizes," however, "a court's power to issue any form of relief—extraordinary or

otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."

*Denedo*, 556 U.S. at 911. This, of course, includes the restrictions on a court's jurisdiction by

Article III of the Constitution, which the "adverse consequences" prong of the *coram nobis*

expressly incorporates. *See Faison*, 956 F. Supp. 2d at 269 (quoting *Hansen*, 906 F. Supp. at

692–93); *Lee*, 84 F. Supp. 3d at 9; *Harrison*, 2015 WL 6406212, at *2; *Rossini*, 2014 WL

5280531, at *1; *see also United States v. Akinsade,* 686 F.3d 248, 252 (4th Cir. 2012) (requiring

that "adverse consequences exist from the conviction sufficient to satisfy the case or controversy

requirement of Article III") (quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.

1987). Indeed, a majority of courts require a *coram nobis* petitioner to show ongoing collateral

consequences above and beyond the conviction itself.[2] *See United States v. Bush,* 888 F.2d

---

[2]    The Seventh Circuit has set out three requirements for a consequence before it can be considered a civil disability sufficient to warrant *coram nobis* relief: "First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past. Second, the disability must arise out of the erroneous conviction. Third, the potential harm to the petitioner must be more than incidental." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir.), *amended,* 919 F.2d 57 (7th Cir. 1990) (footnote omitted).

1145, 1147–48 (7th Cir. 1989) (explaining that showing ongoing civil disabilities serves as a "substitute" to the "custody" requirement of *habeas corpus*); *see also Hager v. United States*, 993 F.2d 4, 5 (1st Cir. 1993) (Breyer, C.J.); *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992); *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989); *United States v. Osser*, 864 F.2d 1056, 1059–60 (3d Cir. 1988); *United States v. Drobny*, 955 F.2d 990, 996 (5th Cir. 1992); *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989); *Stewart v. United States*, 446 F.2d 42, 43–44 (8th Cir. 1971); *but see Hirabayashi*, 828 F.2d at 606-07 ("Any judgment of misconduct has consequences for which one may be legally or professionally accountable."); *United States v. Mandel*, 862 F.2d 1067, 1075 & n.12 (4th Cir. 1988) (stating that a felony conviction "imposes a *status* upon a person which not only makes him vulnerable to future sanctions through new civil disability statutes, but which also seriously affects his reputation and economic opportunities.").[3]

Merely identifying "adverse consequences" of the conviction from which the petitioner may be suffering is insufficient to satisfy the "case or controversy" requirements of Article III. Instead, the petitioner must also show that a favorable decision would eliminate the claimed adverse consequences. *See Lujan*, 504 U.S. at 560–61 (explaining that "the irreducible constitutional minimum of standing" includes a showing of "redressability"). As the First and

---

[3]     As support for the proposition that any conviction causes collateral consequences, the Ninth Circuit relied on language in *Sibron v. New York*, 392 U.S. 40 (1968), which states that all criminal convictions carry adverse consequences, *see id.* at 66–56. As the Seventh Circuit explained in *Craig*, however, *Sibron* "must be viewed in its context." *Craig*, 907 F.2d at 659 n.3. In *Sibron*, the Supreme Court was merely explaining why a criminal appeal does not become moot after the defendant has served his or her sentence. *See Sibron*, 392 U.S. at 50–58. Thus, *Sibron* is inapposite to the issue here as "[c]learly, the completion of sentence does not render a coram nobis petition moot, for that is the only time that such a petition can be brought." *Craig*, 907 F.2d at 659 n.3.
        Further, the notion that any conviction inherently carries adverse consequences sufficient for *coram nobis* relief would render the "adverse consequences" prong of the *coram nobis* test meaningless. "A finding that all convictions inherently carry adverse collateral consequences based on speculative future harms would reduce the second prong of the coram nobis test to a mere formality." *Cruzado-Laureano v. United States*, Civil No. 09-2303 (JAF), 2010 WL 4340987, at *4 (D.P.R. Nov. 2, 2010). Further, such a rule would be inconsistent with the Supreme Court's admonition that the "extraordinary remedy of *coram nobis* issues only in extreme cases." *Denedo*, 129 S.Ct. at 2223.

Second Circuits have explained, in addition to showing collateral consequences, "it must be shown that the court's decree will eliminate the claimed collateral consequence and bring about the relief sought." *George*, 676 F.3d at 256 n.3; *see also Nicks*, 955 F.2d at 167 (requiring a *coram nobis* petitioner to show that he or she continues to "suffer legal consequences from [a] conviction *that may be remedied by granting of the writ*" (emphasis added)).[4] Absent a showing that a favorable decision would eliminate the claimed adverse consequence, the petitioner does not satisfy the standing requirements of Article III and, thus, this Court lacks subject-matter jurisdiction.

Third, even assuming, *arguendo*, that the "adverse consequences" prong is a "merits" question rather than a "jurisdictional" question, the defendant still would not be entitled to relief. Regardless of whether the prong is considered a merits question or a jurisdictional question, the claimed adverse consequences must still "satisfy the case or controversy requirement of Article III." Accordingly, a *coram nobis* petitioner must show that granting the writ would eliminate the claimed adverse consequence. *See, e.g.*, *George*, 676 F.3d at 256 n.3; *see also Nicks*, 955 F.2d at 167. For the reasons stated above and in this Court's prior opinion, the defendant in this case cannot do so. Even if Counts I and II were invalidated, the defendant would remain encumbered by the same civil disabilities because the defendant would still stand convicted of Count III. Thus, because a favorable decision could not eliminate the adverse consequences of which the petitioner complains, the defendant cannot satisfy the "adverse consequences" prong of the *coram nobis* test, regardless of whether it is considered a jurisdictional or merits question. *See Rossini*, 2014 WL 5280531, at *4 ("[E]ven if the petitioner's writ of *coram nobis* was granted

---

[4]     Although the First Circuit explained that a *coram nobis* petitioner must show that granting the writ would eliminate the claimed adverse consequences, it did not rely on this for its decision. Nonetheless, the First Circuit noted that "[t]he record here offers no compelling reason to believe that vacating the petitioner's conviction would automatically restore his retirement benefits." *George*, 676 F.3d at 256 n.3.

and his conviction was vacated, the injury he claims he suffered—that he can no longer obtain employment in the field of counterterrorism—would not necessarily be redressed" and thus "the petitioner cannot be heard to argue that the adverse consequences he suffered were either solely the result of his conviction or that they are sufficient to satisfy Article III's case or controversy requirement.").

## B. Prejudicial Spillover

Presumably to get around the defendant's redressability problem, the defendant now argues, for the first time in his motion for reconsideration, that if Counts I and II were vacated, "prejudicial spillover" would entail that Count III also be vacated. Def's Mot. at 9–14. As an initial matter, this argument is not timely raised because it has been "presented for the first time" in the defendant's Rule 59(e) motion.[5] *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C.

---

[5]     The defendant's clear focus in his petition was the validity of his convictions on Counts I and II in the wake of *McDonnell*. *See* Def.'s Mot. Reconsider at 1 ("In Mr. Verrusio's Petition, relying on *McDonnell v. United States*, 136 S. Ct. 2355 (2016), he challenged the fundamental fairness of his trial, and argued that the prejudice he suffered due to the violation of his rights should result in his three convictions being vacated."); Def.'s Mot.at 2 ("[B]ecause the indictment lacks an allegation of official action, it fails to allege ·an element of the offense in violation of the Grand Jury Clause of the Fifth Amendment."); *id.* ("Given that Mr. Verrusio repeatedly argued during his trial that the government was relying on evidence to prove official action that was not covered by the statute, and that he has now been proven correct, his trial can hardly be viewed as having been fair or consistent with due process."); *id.* at 13 ("[B]ecause none of the five official acts relied on by the government in the indictment can satisfy the requirements of *McDonnell,* the indictment fails to allege an essential element of the offense, and therefore the indictment violates Mr. Verrusio's rights under the Fifth Amendment."); *id.* at 13–19 (arguing the government elicited no testimony that described "official action" as understood post-*McDonnell*); *id.* at 27 (arguing the second prong of the *coram nobis* test was met because the defendant "could not have previously relied on directly on point precedent from the U.S. Supreme Court"); *id.* at 29 ("Because Mr. Verrusio's indictment and the evidence at his trial was based on an interpretation of official act that was always invalid, his convictions should be vacated.").

    To be sure, the defendant's proposed order sought vacatur of all three of his convictions, *see* Def.'s Mot., Proposed Order, ECF No. 162-3, and the defendant raised a number of challenges to the fairness of his trial generally. Among these complaints was the decision by the district court to quash a subpoena of Vivian Curry, the legislative director for Congressman John Boozman, a member of the House Transportation Committee. *See* Def.'s Mot. at 20–22. The D.C. Circuit fully addressed this argument, however, holding that Ms. Curry's testimony would not have been material, as she would have testified merely that one of the lobbyists in the case offered her gifts as well, a fact that "hardly exculpates Verrusio." *Verrusio*, 762 F.3d at 24. In any event, Ms. Curry's testimony would have been, at most, only relevant to the defendant's gratuity counts, not Count III. The defendant's remaining objections to the general fairness of his trial were addressed in this Court's prior opinion. *See Verrusio I*, 2017 WL 1437055, at *10 n.5. At no point in his prior petition did the defendant ever raise the issue of prejudicial spillover. To the extent this argument was implicit in his arguments regarding the fairness of his trial, however, the merits of his prejudicial spillover argument in his Rule 59(e) motion are discussed *infra*.

Cir. 2010) ("It is well settled that an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised[.]" (internal quotation marks and citation omitted)).

Further, it is not at all clear that "prejudicial spillover" should be considered in a petition for *coram nobis* relief in a case such as this one. Although prejudicial spillover is an important consideration for direct appeals, or even *habeas*, "[a]n important difference between habeas relief and *coram nobis* lies in the fact that, because the latter comes after the petitioner has completed his sentence, the petitioner will not be retried; thus, the granting of *coram nobis* normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged." *United States v. Mandanici*, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring). In part for this reason, a *coram nobis* petitioner is held to the high standard of showing an error that "compel[s] . . . action to achieve justice." *Morgan*, 346 U.S. at 511. In contrast, because prejudicial spillover is ordinarily considered on direct appeal, such a finding normally results in the possibility of a retrial on the remaining counts. *See, e.g.*, *United States v. Black*, 625 F.3d 386, 389-90 (7th Cir. 2010) (explaining that the remedy for prejudicial spillover is retrial). This may be because prejudicial spillover is effectively synonymous with retroactive misjoinder. *See, e.g.*, *Hamilton*, 334 F.3d at 181; *United States v. Aldrich*, 169 F.3d 526, 528 (8th Cir. 1999); *United States v. Gabriel*, 125 F.3d 89, 105 (2d Cir. 1997); *but see Cross*, 308 F.3d at 317 n.14 (stating that the description of "prejudicial spillover" as "retroactive misjoinder" can be misleading). In the instant case, by asking for *coram nobis* relief *and* prejudicial spillover, the defendant is asking for an expungement of not only his convictions on Counts I and II, but also his conviction on Count III for violation of 18 U.S.C. § 1001(a), in a posture where the D.C. Circuit has already

held, on direct appeal, that sufficient evidence supported the conviction on Count III. *See*

*Verrusio*, 762 F.3d at 19–21. Thus, if the defendant's arguments were accepted, "the

consequences of granting a writ of *coram nobis* in this case would be to expunge, without

possibility of reinstatement, the conviction of a person who more likely than not committed the

offense[] of which he stands convicted." *Mandanici*, 205 F.3d at 532 (Kearse, J., concurring).

Such a result hardly seems in keeping with the standard that *coram nobis* relief is only warranted

in order to "achieve justice." *Morgan*, 346 U.S. at 511.

Even if the defendant's argument for prejudicial spillover is considered, however, it still

fails on the merits. "Generally, invalidation of the convictions under one count does not lead to

automatic reversal of the convictions on other counts." *United States v. Pelullo*, 14 F.3d 881,

897 (3d Cir. 1994). Nonetheless, "[w]hen an appellate court reverses some but not all counts of

a multicount conviction, the court must determine if prejudicial spillover from evidence

introduced in support of the reversed counts requires the remaining convictions to be upset."

*United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994). "[P]rejudicial spillover analysis

requires a finding that 'there was a spillover of evidence from the reversed count that would have

been inadmissible at a trial limited to the remaining count.'" *United States v. Riley*, 621 F.3d

312, 325 (3d Cir. 2010), *as amended* (Oct. 21, 2010) (quoting *United States v. Cross*, 308 F.3d

308, 319 (3d Cir. 2002)); *see also United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012);

*United States v. Bailey*, 859 F.2d 1265, 1273 n.1 (7th Cir. 1988) (finding that reversal of mail

fraud counts did not require reversal of remaining convictions because the counts were properly

joined, there was no basis for severance, and the evidence admitted to support the remaining

counts could have been admitted even without the reversed counts). In other words, "[t]he

concept of prejudicial spillover . . . requires an assessment of the likelihood that the jury, in

considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant." *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003). "If the answer is 'no,' then [the] analysis ends, as the reversed count cannot have prejudiced the defendant." *Cross*, 308 F.3d at 318. "If the answer is 'yes,' however, 'we must ask whether the error was harmless, that is, whether it is highly probable that the error did not prejudice the jury's verdict on the remaining counts.'" *Riley*, 621 F.3d at 325 (quoting *United States v. Gambone*, 314 F.3d 163, 181 (3d Cir. 2003)). "Courts have concluded that where the reversed and the remaining counts arise out of similar facts, and the evidence introduced would have been admissible as to both, the defendant has suffered no prejudice." *Rooney*, 37 F.3d at 855; *see also United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995) ("In cases where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both, it is difficult for a defendant to make a showing of prejudicial spillover."). This prejudice must be "compelling," *Hamilton*, 334 F.3d at 181–82 (quoting *United States v. Vebeliunas*, 76 F.3d 1283, 1293 (2d Cir. 1996), and "so pervasive that a miscarriage of justice looms," *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) (quoting *United States v. Levy-Cordero*, 67 F.3d 1002, 1008 (1st Cir. 1995)). As such, to establish prejudicial spillover, a defendant "bears an extremely heavy burden." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988), *cert. denied*, 490 U.S. 1004 (1989); *see United States v. Gambino*, 809 F. Supp. 1061, 1074 (S.D.N.Y. 1992) (noting that "claims of 'prejudicial spillover' rarely succeed").

The D.C. Circuit has yet to opine on the requirements for a finding of prejudicial spillover. In *United States v. Rooney*, the Second Circuit set out three factors to consider when assessing prejudicial spillover: (1) "whether the evidence on the reversed count would have tended to incite or arouse the jury into convicting the defendant on the remaining counts"; (2)

whether "the reversed and the remaining counts arise out of similar facts, and the evidence introduced would have been admissible as to both"; and (3) "the strength of the government's case on the counts in question." *Rooney*, 37 F.3d at 856; *see also Lazarenko*, 564 F.3d at 1043 (noting that in considering whether a new trial should be granted for prejudicial spillover, the following factors are considered: "(1) whether the evidence was so inflammatory that it would tend to cause the jury to convict on the remaining counts; (2) the degree of overlap and similarity between the dismissed and remaining counts; and (3) a general assessment of the strength of the government's case on the remaining counts." (citing *Vebeliunas*, 76 F.3d at 1294)). For the second *Rooney* factor, the rule is that spillover "is unlikely if the dismissed count and the remaining counts were either quite similar or quite dissimilar." *Hamilton*, 334 F.3d at 182. In other words, "'[i]n cases where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both, it is difficult for a defendant to make a showing of prejudicial spillover.'" *Id.* at 182–83 (quoting *Wapnick,* 60 F.3d at 954); *United States v. Naiman*, 211 F.3d 40, 50 (2d Cir. 2000) ("The trial evidence of bribery does not support a claim of prejudicial spillover because much of the evidence . . . was also admissible for purposes of the misapplication charge"). "It is only in those cases in which evidence is introduced on the invalidated count that would otherwise be inadmissible on the remaining counts, *and* this evidence is presented in such a manner that tends to indicate that the jury probably utilized this evidence in reaching a verdict on the remaining counts, that spillover prejudice is likely to occur.'" *Hamilton*, 334 F.3d at 183 (emphasis in original) (quoting *Rooney*, 37 F.3d at 856). Finally, "where the record indicates that the jury was able to distinguish between counts or between defendants, and to assess separately the evidence pertinent to each,

[the Second Circuit has] found no basis for concluding that a new trial is warranted because of prejudicial spillover." *Id*.

Considering these factors, it is evident the defendant has not sustained his "extremely heavy burden" of showing prejudice "so pervasive that a miscarriage of justice looms." The defendant claims that the alleged illegality of the World Series trip was "at the heart of the government's case in general, and it was relied on heavily by the government for its Count III-related arguments that (i) the trip was a gift and therefore reportable on Schedule VI on the financial disclosure form, and (ii) Mr. Verrusio had a motive to not report what it described as a gift on his disclosure form." Def.'s Mot. Reconsider at 12. The defendant avers that after *McDonnell*, the government would have been precluded from arguing that the World Series trip was illegal, and thus the jury "could have had reasonable doubt as to whether the New York Trip was a gift that was required to be reported on Schedule VI." *Id.* The defendant contends that without Counts I and II, the government could not "bludgeon Mr. Verrusio with the accusation that he engaged in a criminal and illegal act that he needed to cover up by lying on his financial disclosure form" and that "[i]t is also difficult to see how the government would have been permitted to review the New York Trip in the same excruciating detail absent Counts I and II." *Id.* at 13. Finally, the defendant argues that the government's case on Count III was "weak" and that it simply amounted to the claim that "because the New York Trip was criminal and illegal, it was obviously a gift and should have been reported on Schedule VI." *Id.* at 14.

Even if Count III were tried by itself, however, the government still would have been entitled to present evidence relating to the World Series trip and the defendant's motive for omitting it on his financial disclosure form. *See United States v. Post*, 950 F. Supp. 2d 519, 542 (S.D.N.Y. 2013) (concluding that in order to prove the defendant made false statements, the

Government "necessarily would have to unravel [the defendant's] numerous identifies and how he hid behind false and fictitious names and businesses," and thus "the large majority of evidence that was admitted for the fraud counts would have been admissible in a trial solely on the false statements count"); *see also United States v. Neill*, 964 F. Supp. 438, 454 (D.D.C. 1997) (no prejudicial spillover where "[t]he majority, if not all, of the . . . evidence relating to" the challenged count "would have been admissible in a separate trial of" the remaining count, "because it is probative of the defendant's motive, plan, knowledge or absence of mistake" (citing FED. R. EVID. 404(b)). In order to prove that the defendant made a false statement on his financial disclosure form by omitting the World Series trip, the government would necessarily have to provide evidence about the nature of the World Series trip, how it was not for official business, and that the defendant knew that he should have disclosed the trip. In particular, a conviction for 18 U.S.C. § 1001(a) requires the government to prove that the defendant "knowingly and willfully . . . ma[de] any materially false, fictitious, or fraudulent statement or representation," 18 U.S.C. § 1001(a), (a)(2), and Federal Rule of Evidence 404(b) expressly permits the admission of otherwise inadmissible evidence to prove, among other things, motive and intent, FED. R. EVID. 404(b). Thus, much of the evidence about the World Series trip that was admitted for the gratuity counts would have been admissible in a trial on the false statement count alone.

Further, even if some of this evidence would have been inadmissible, the inadmissible evidence would have to have been prejudicial and of "such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts." *Hamilton*, 334 F.3d at 182; *see also Vebeliunas*, 76 F.3d at 1294; *Wapnick*, 60 F.3d at 953. The defendant fails to show how the evidence, as presented, would have been "so inflammatory as to

make the jury convict on the basis of prejudice rather than evidence or logic." *Post*, 950 F. Supp. 2d at 543. The defendant complains primarily about three pieces of evidence. First, he objects to testimony by Todd Boulanger, a lobbyist who invited the defendant on the World Series trip, about interactions that involved Boulanger "trading expensive items for legislative favors from [Trevor] Blackann," a legislative assistant to Senator Kit Bond. Def.'s Reply Supp. Def.'s Mot. at 7, ECF No. 182. The defendant argues that Boulanger testified about Blackann's "efforts to insert amendments into the Federal Highway Bill in the Senate" and that Boulanger "peppered his testimony with references to Jack Abramoff." *Id.* Second, he argues that Blackann offered "similar testimony that would be inadmissible as to Count III for the same reasons." *Id.* Finally, the defendant suggests that the "entire testimony of Michael Strauss, who was the manager of the hotel where Mr. Verrusio stayed in New York . . . would be [in]admissible at a Count III-only trial." *Id.* at 7–8. Although the defendant claims these pieces of evidence would have been inadmissible, he offers no convincing argument that the evidence would be as inflammatory as to be prejudicial. To the extent this testimony would be inadmissible in a trial solely on Count III, none of it would bear on the question of whether the defendant made a "materially false, fictitious, or fraudulent statement or representation" by omitting the gifts from Schedule VI of his financial disclosure form. *See* 18 U.S.C. § 1001(a)(2). The defendant does not explain how this evidence was so inflammatory as to prevent the jury from making the straightforward determination of whether the defendant omitted material information on his financial disclosure form and whether he did so knowingly and willfully.

As to the strength of the government's case, the defendant himself admitted to FBI agents that the World Series trip "was not an official trip" and that "he knew he should have disclosed the trip but had not done so." *Verrusio*, 762 F.3d at 10 (internal quotation marks omitted). The

D.C. Circuit flatly rejected the defendant's argument—made at trial and on appeal—that there was no evidence "upon which the jury could differentiate between reportable gifts and travel because no witness—expert or otherwise—testified with specific knowledge about gifts [that] are reportable on Schedule VI." *Id.* (internal quotation marks omitted). The D.C. Circuit explained that the government offered as evidence the instructions for Schedule VI which specifically state that employees have to report gifts from a "single source totaling more than $285 on Schedule VI" and "[a]ll types of gifts, *including travel-related expenses provided for [the employee's] personal benefit*, must be reported on Schedule VI." *Id.* (internal quotation marks and citation omitted; emphasis and alteration in original). Second, the D.C. Circuit concluded that there "was sufficient evidence for the jury to conclude that the trip and its related expenses were for Verrusio's 'personal benefit,' and not 'in connection with official duties." *Id.* In particular, the jury heard that the defendant admitted to the FBI "that he knew he should have" disclosed the trip and that it "wasn't an official trip." *Id.* Three other witnesses corroborated this statement and "testified that the trip was not for official business." *Id.* Finally, the D.C. Circuit noted that the defendant did not report the trip on his Schedule VII either. *Id.* Thus, contrary to the defendant's claim, the government's case for Count III was strong as the government was able to present evidence of the defendant stating, in his own words, that he should have reported the trip on his Schedule VI and that the trip "would not have passed the scrutiny of the Ethics Office." *Id.*

Finally, any risk of prejudicial spillover was sufficiently minimized by the district court's jury instructions. The Court instructed the jury as follows:

> Each count of the indictment charges a separate offense. You should consider each
> offense and the evidence which applies to it separately. And you should return separate
> verdicts as to each count. The fact that you may find the defendant guilty or not guilty on

any one count of the indictment should not influence your verdict as to any other count of the indictment.

Tr. (Feb. 7, 2011), at 75:20–25, ECF No. 175. "The jury is presumed to follow the instructions," *United States v. Hall*, 610 F.3d 727, 742 (D.C. Cir. 2010) (citing *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)), and the defendant "raises no argument nor proffered evidence that would suggest to us that the jury did not heed the court's admonition," *United States v. Celis*, 608 F.3d 818, 846 (D.C. Cir. 2010); *cf. United States v. Carson*, 455 F.3d 336, 374–75 (D.C. Cir. 2006) (concluding that a jury instruction "that the jury should give separate consideration and render separate verdicts with respect to each defendant," and that "[e]ach defendant is entitled to have his guilt or innocence of the crime . . . determined from his own conduct and from the evidence that applies to him as if he were being tried alone" cured any risk of prejudicial spillover in a multi-defendant trial) (internal quotation marks omitted); *see also Cross*, 308 F.3d at 327 (finding no prejudicial spillover, in part because "the District Court admonished the jury that it was not to convict [the defendants] on one of the charged offenses merely because it found them guilty of the other, and juries are presumed to follow their instructions" (internal quotation marks omitted)); *see also United States v. Katakis*, Criminal No. 11-0511 (WBS), 2017 WL 1956014, at *4 (E.D. Cal. May 11, 2017) (rejecting prejudicial argument and noting that "the court carefully instructed the jury to consider each count and each defendant separately").

In sum, based on the *Rooney* factors, the majority of the evidence presented at trial would also have been relevant in a trial solely on Count III because the evidence would have been relevant to show the defendant's motive for omitting the World Series trip from Schedule VI of his financial disclosure form. Further, even if some of the evidence would be inadmissible, the defendant has not shown that the evidence would have been so inflammatory as to be prejudicial.

Finally, the government's case on Count III was exceedingly strong as the government presented testimony that the defendant himself admitted the trip was not for official business, which was corroborated by three other witnesses, and that disclosing the trip "would not have passed the scrutiny of the Ethics Office."  Accordingly, assuming, for the sake of argument, that Counts I and II should be invalidated, there is no evidence of any prejudicial spillover.  *See, e.g.*, *Black*, 625 F.3d at 390 (finding no prejudicial spillover to counts for obstruction of justice because "the theory of honest-services fraud submitted to the jury was esoteric rather than inflammatory; the evidence of such fraud was a subset of the evidence of pecuniary fraud; and the evidence of obstruction of justice was very strong"); *Martignoni*, 2011 WL 4834217 at *11 (finding no prejudicial spillover to conviction for making false entries in bank records as most of the evidence presented to prove honest services-fraud would have been admissible to prove the bank fraud counts and "any evidence that might have been inadmissible had Martignoni been charged only with [bank fraud] was not 'prejudicial' in the sense that it would 'have tended to incite or arouse the jury into convicting the defendant on the remaining counts'" (quoting *Vebeliunas*, 76 F.3d at 1294))

## IV.    CONCLUSION

For the reasons stated above, the defendant's motion for reconsideration is denied.  An appropriate Order accompanies this Memorandum Opinion.

Date: June 19, 2017

_____
BERYL A. HOWELL
Chief Judge